UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No. 24-cr-00172-APM |
| | ) | |
| **EDWARD AMYOT, et al** | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**DEFENDANT EDWARD AMYOT'S SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

1

I. Introduction

Comes now Defendants Edward Amyot and Dominic Jakubowski ("Defendants") by and through their undersigned counsel of record, William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on August 29, 2024.

Defendants appear for sentencing before this Court having pled guilty to Count One of the Information, charging them with a violation of 18 U.S.C. § 1752 (a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

Defendants face a statutory maximum penalty of up to 12 months imprisonment and a fine up to $100,000.

II. Sentencing Guidelines Calculation

Defendants and the Government entered into a written plea agreement. A violation of 18 U.S.C. § 1752 (a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds -- a Class A misdemeanor with a maximum term of imprisonment of up to 12 months

The Guideline Calculation of the Presentence Report

| | |
|---|---:|
| **Base Offense Level:** | **10** |
| Specific Offense Characteristics: | 0 |
| Victim Related Adjustment: | 0 |
| Adjustment for Role in the Offense: | 0 |
| Adjustment for Obstruction of Justice: | 0 |
| Adjusted Offense Level **(Subtotal):** | **10** |
| Chapter Four Enhancement: | 0 |
| Acceptance of Responsibility: | -2 |
| **Total Offense Level:** | **8** |

The Defendant is also entitled to a further -2 reduction as a "Zero Point Offender" under U.S.S.G. Sec. 4C1.1, as he has no criminal history points and the offense of conviction is not a crime of violence. With that additional reduction, Mr. Amyot's Total Offense Level should be 6.

Based on an offense level of 6, and a Criminal History Category of I, the Recommended Guideline Range is 0 -- 6 months.

III.    The Offense Conduct.

The parties entered into an agreed upon "Statement of Offense" as part of the plea agreement. The Probation Officer has accurately set forth the "Offense Conduct" in the Presentence Report based on agreed upon "Statement of Offense."

IV.    Sentencing Factors Under Sec. 3553(a)

Pursuant to 18 U.S.C. § 3553(a), the numerous factors must be taken into account by the Court in formulating an appropriate sentence in this case.

The facts of this case, including the facts of the offense and factual circumstances pertinent to the Defendants background and personal characteristics, should inform this Court with respect to the following issues to be considered pursuant to Sec. 3553(a):

> 1.    Nature and circumstances of the offense and the history and personal characteristics of the defendant.
>
> a. The Nature and Circumstances of the Offense.

For the most part the actions of the Defendant's on January 6 are not in dispute. As Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be generally categorized as having three primary constituent parts:

3

1) a relatively small group of individuals who came to the Capitol with the intent to engage in violence for the purpose of disrupting the Congress's certification of the 2020 Electoral Vote count;

2) a larger number of protesters who intended to protest in a loud and raucous manner as a manifestation of their unhappiness and distrust with regard to the outcome of the election, but with no predetermined intention of engaging in violence.  Some in this second group were drawn into committing acts of violence once there as a result of the way events unfolded; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups.

Mr. Amyot, by both his intentions and actions set forth above, falls in the third group of protestors.  He traveled along with his co-Defendant Dominic Jakobowski to Washington, D.C. for the "Stop the Steal" rally of then President Donald Trump.  Their purpose for attending the rally was to express their concerns regarding what they saw as irregularities of the 2020 Presidential election.

The following facts provide added context to their conduct on January 6, 2021:

Amyot and Jakobowski flew from Detroit to Washington D.C. on the morning of January 6.  When they arrived at the Ellipse, former President Trump was already speaking.  The Defendants went to the Capitol Building after learning that former President Trump was likely going to speak there later in the afternoon.  While they waited at the Capitol more people began to arrive.  They did not expect the crowd to grow so large and include people

with all types of flags, banners and signs.  As the crowd grew larger, the noise increased and people in the crowd grew progressively more animated and agitated.

From there vantage point the Defendants saw persons to the left (north) jump over barricades along a path towards the Capitol building, with a large crowd then following behind once the barricades were removed.  Next the people in the middle began to push over soft fencing and bypass other barricades blocking them from getting closer to the Capitol.  Finally, members of the crowd to their right (south) bypassed the barriers on that side.  As the large mass of people moved through the park and towards the Capitol the Defendants joined them.

While they were on the grounds and in the middle of the mass of protesters, they witnessed and were a part of what they observed to be a mostly peaceful demonstration.  For the most part, because of their location in the crowd their view was limited with respect to the violence taking place at the very front where the police and protesters were coming together.  The Defendants did not, in any way, intend to take any or be part of any type of mischievous or violent acts against any law enforcement officers. The Defendants witnessed others dismantling fencing and railings, and throwing them at officers. The Defendants assisted some in the crowd who had suffered injury of one type or another.

The Defendants also witnessed a man who was on the tower meant for television and news crews. The man was yelling into a bullhorn, attempting to command all of the people ensnarled with the police line.

5

He was saying telling the crowd "Move forward or they will move in" and "if you move back they will move in." Listening to his directions it seemed to Mr. Amyot and Jakobowski that the only way for the crowd to maintain its presence and protest was to continue pressing forward towards the building and they followed the directions as they heard them being given.

At one point, when there was a lull in the exchange, the Defendants did walk up to a female officer. Her Badge name was BEAVER. The Defendants told her, "I am very sorry we are here, but we need to address our grievances because we feel that the election was a farce."

The Defendants remained in this general location until a rumor passed among the crowd that a woman inside had been shot and killed by Capitol Police. At that time, the Defendants spoke to each other and agreed that something did not feel right, this is not what they were here for, and the Defendants decided to leave. The Defendants returned to their hotel and stayed that night. The Defendants returned home the next morning.

The Defendants estimate that they were on the Capitol grounds for approximately two to three hours.

      b. <u>History and Personal Characteristics</u>.

Defendant Amyot was born in Rochester Hills, Michigan, on August 28, 1987. His parents worked very hard to send his siblings and himself to good schools and provide all of the things they needed in life. Defendant Amyot's family is very close. Growing up, they did a lot of family-oriented activities, as regularly attended church services and church-sponsored activities. Defendant

6

Amyot's parents taught them that they were blessed and because they were blessed, it was very important to give back to the community, the church, and the less fortunate. Defendant Amyot's family spent countless hours volunteering with their church including charity events, Lenten fish dinners, pancake breakfasts, and the annual festivals.

In 2007, due to the poor economy, Defendant Amyot elected to join the United Stated Navy.  But due to an illness he was not able to complete his enlistment and was discharged.  Defendant Amyot came home and started his own business that he has successful operated since 2009. It is Defendant Amyot's pleasure to employ eleven people at this time.

Defendant Amyot has been a member of the Knights of Columbus, a fraternal group associated with the Catholic Church, since 2003. Defendant Amyot was, for two years, the youngest member in Michigan. Defendant Amyot does volunteer work through the Knights of Columbus.

Mr. Amyot and his wife Pamela were married on June 1, 2019, and now have a young daughter named Lily.  It as Lily's birth that contributed to Mr. Amyot's decision to become a firefighter in 2020. Defendant Amyot decided to join the Fire Department as a way to continue to serve his community. Defendant Amyot went through the fire academy training and is a full-fledged fire fighter for Kimball Township Michigan. Being a fireman just one of the many ways Defendant Amyot strives to set a good example for his daughter and family.

Defendant Amyot continues to serve his community, and his country, whenever and wherever an opportunity is presented. Defendant Amyot

7

supports local Veterans and Veterans groups whenever approached. Defendant Amyot will continue this behavior as it is not only to show his daughter a positive example of what a good American is, but this behavior is just how he was raised and wants to raise his children.

> 2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other <u>correctional treatment in the most effective manner</u>.

This Court, as a matter of justice and equity, should treat the Defendant Amyot no different than other misdemeanant offenders convicted in connection with the riot at the Capitol on January 6. Defendant Amyot engaged in no act of violence. He did not engage with any law enforcement officers, and he did not engage in any destruction of property.

Given the Defendants' actual conduct on January 6, the sentence of probation recommended by the Probation Officer is an appropriate response from this Court to address the nature of the criminal acts involved here. Anything beyond that is unnecessarily punitive, particularly in light of the collateral consequences that the federal government might have an adverse impact on his career. [what

Other Judges of this Court have acknowledged that such sentences are appropriate in substantially similar cases. <u>United States v. Wiesmar</u>, 21-cr-00592-1, <u>United States v. Frankowski</u>, 21-cr-00592-2, <u>United States v. Cronin</u>, 21-cr- 00233. In each of those cases the Government asked for a term of incarceration, but the Court determined that such a sentence was not

8

warranted by the facts and that a sentence of probation was sufficient to accomplish the Sec. 3553(a) policy goals.

The Defendants in Wiesmar and Frankowski are similar to the Defendants – particularly given that their conduct also included having gone inside the Capitol.  They entered the Capitol building following the crowd and while inside the building for roughly an hour they entered two Senate offices and spent several minutes inside each.

Cronin is also similarly situated to the Defendants, and he also entered the building.  There, along with others, he made his way towards the Senate side of the Capitol. After being in the building for a short time, Cronin exited the building the same route he entered. Again, though different from the Defendants, Cronin entered the building and spent some time traveling through the halls before exiting the building causing no damage nor engage in violence.

But maybe most similar for purposes here is the sentence imposed on by this Court in United States v. Greene, 21-cr-00028, a defendant in the third Oath Keepers trial.  While the facts are entirely different – as the Court knows quite well -- Defendant Greene remained outside the Capitol.  He did go to trial where he was convicted on a single "A" misdemeanor while being acquitted of three felonies and having a fourth felony dismissed following this Court declaring a mistrial.  Notwithstanding having gone to trial, this Court nevertheless saw fit to impose only a sentence of two years probation on Mr. Greene.

Mr. Amyot has pled guilty, and the offense conduct here is no more aggravating that was the conduct of Mr. Greene.  On that basis, a sentence of one year probation would be factually and legally justified in this case.

DEFENDANT'S SENTENCING RECOMMENDATION

Based on a totality of the factors set forth in Section 3553(a), a sentence of one-year probation is requested by Defendant Edward Amyot for his actions on January 6, 2021.

Date: August 22, 2024                    Respectfully Submitted,


/s/ William L. Shipley
William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendants*