**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cr-00172-APM** |
| | ) | |
| **DOMINIC JAKUBOWKSI,  et al** | ) | |
| | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

**DEFENDANT DOMINIC JAKUBOWSKI'S SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

I.     <u>Introduction</u>

Comes now Defendants Dominic Jakubowski by and through his undersigned counsel of record, William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on August 29, 2024.

Defendant Jakubowski appears for sentencing before this Court having pled guilty to Count One of the Information, charging them with a violation of 18 U.S.C. § 1752 (a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

Defendant Jakubowski faces a statutory maximum penalty of up to 12 months imprisonment and a fine up to $100,000.

II.    <u>Sentencing Guidelines Calculation</u>

Defendant Jakubowski and the Government entered into a written plea agreement.  A violation of 18 U.S.C. § 1752 (a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds -- is a Class A misdemeanor with a maximum term of imprisonment of up to 12 months

The Guideline Calculation of the Presentence Report

| | |
|---|---|
| **Base Offense Level:** | **10** |
| Specific Offense Characteristics: | 0 |
| Victim Related Adjustment: | 0 |
| Adjustment for Role in the Offense: | 0 |
| Adjustment for Obstruction of Justice: | 0 |
| Adjusted Offense Level **(Subtotal):** | **10** |
| Chapter Four Enhancement: | 0 |
| Acceptance of Responsibility: | -2 |
| **Total Offense Level:** | **8** |

The Defendant is also entitled to a further -2 reduction as a "Zero Point Offender" under U.S.S.G. Sec. 4C1.1, as he has no criminal history points and the offense of conviction is not a crime of violence. With that additional reduction, Mr. Jakubowski's Total Offense Level should be 6.

Based on an offense level of 6, and a Criminal History Category of I, the Recommended Guideline Range is 0 -- 6 months.

III.     The Offense Conduct.

The parties entered into an agreed upon "Statement of Offense" as part of the plea agreement. The Probation Officer has accurately set forth the relevant facts in the Presentence Report.

IV.     Sentencing Factors Under Sec. 3553(a)

Pursuant to 18 U.S.C. § 3553(a), the numerous factors must be taken into account by the Court in formulating an appropriate sentence in this case.

The facts of this case, including the facts of the offense and factual circumstances pertinent to the Defendants background and personal characteristics, should inform this Court with respect to the following issues to be considered pursuant to Sec. 3553(a):

1.     Nature and circumstances of the offense and the history and personal characteristics of the defendant.

a.  The Nature and Circumstances of the Offense.

For the most part the actions of the Defendants on January 6 are not in dispute. As Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be generally categorized as having three primary constituent parts:

3

1) a relatively small group of individuals who came to the Capitol with the intent to engage in violence for the purpose of disrupting the Congress's certification of the 2020 Electoral Vote count;

2) a larger number of protesters who intended to protest in loud and raucous manner as a manifestation of their unhappiness and distrust with regard to the outcome of the election -- but with no predetermined intention to engage in violence.  Some in this group were drawn into committing acts of violence once there; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups.

Mr. Jakubowski, by both his intentions and actions set forth above, falls in the third group of protestors.  He traveled along with his co-Defendant Edward Amyot to Washington, D.C. for the "Stop the Steal" rally of then President Donald Trump.  Their purpose for attending the rally was to express their concerns regarding what they saw as irregularities of the 2020 Presidential election.

The following facts provide added context to their conduct on January 6, 2021:

Amyot and Jakobowski flew from Detroit to Washington D.C. on the morning of January 6.  When they arrived at the Ellipse, former President Trump was already speaking.  The Defendants went to the Capitol Building after learning that former President Trump was likely going to speak there later in the afternoon.  While they waited at the Capitol more people began to  arrive.  They did not expect the crowd to grow so large and include people

with all types of flags, banners, and signs.  As the crowd grew larger, the noise increased and people in the crowd grew progressively more animated and agitated.

From their vantage point, the Defendants saw persons to the left (north) jump over barricades along a path toward the Capitol building, with a large crowd then following behind once the barricades were removed.  Next, the people in the middle began to push over soft fencing and bypass other barricades blocking them from getting closer to the Capitol.  Finally, members of the crowd to their right (south) bypassed the barriers on that side.  As the large mass of people moved through the park and towards the Capitol the Defendants joined them.

While they were on the grounds and in the middle of the mass of protesters, they witnessed and were a part of what they observed to be a mostly peaceful demonstration.  For the most part, because of their location in the crowd their view was limited with respect to the violence taking place at the very front where the police and protesters were coming together.   The Defendants did not, in any way, intend to take any or be part of any type of mischievous or violent acts against any law enforcement officers. The Defendants witnessed others dismantling fencing and railings, and throwing them at officers. The Defendants assisted some in the crowd who had suffered injury of one type or another.

The Defendants also witnessed a man who was on the tower meant for television and news crews. The man was yelling into a bullhorn, attempting to command all of the people ensnarled with the police line.

5

He was telling the crowd "Move forward or they will move in" and "if you move back they will move in."  Listening to his directions it seemed to Mr. Amyot and Jakobowski that the only way for the crowd to maintain its presence and protest was to continue pressing forward towards the building and they followed the directions as they heard them being given.

At one point, when there was a lull in the exchange, the Defendants did walk up to a female officer. Her Badge name was BEAVER. The Defendants told her, "I am very sorry we are here, but we need to address our grievances because we feel that the election was a farce."

The Defendants remained in this general location until a rumor passed among the crowd that a woman inside had been shot and killed by Capitol Police. At that time, the Defendants spoke to each other and agreed that something did not feel right, this is not what they were here for, and the Defendants decided to leave. The Defendants returned to their hotel and stayed that night. The Defendants returned home the next morning.

The Defendants estimate that they were on the Capitol grounds for approximately two to three hours.

b. <u>History and Personal Characteristics</u>.

Defendant Jakubowski was born in August of 2000 to a family of Polish immigrants. His mother immigrated from Poland and his father is a 2nd generation American United Auto Worker. Defendant Jakubowski was raised Catholic at Our Lady of Czestochowa Polish Catholic Church. At this church he received his baptism, first communion, and confirmation. Defendant Jakubowski was always at the top of his class in school and put academics and

6

academically focused extra-curricular activities first.  Beginning at age 6 he participated in Cub Scouts and Boy Scouts. He devoted himself to scouting and in which he learned the importance of integrity, honor, and doing duty to God and Country. As a Scout Defendant Jakubowski went above and beyond and was a great example to other kids. He collected three times as many merit badges as what was required for Eagle Scout and participated in the Regional Mackinac Island Honor Guard. His leadership and example resulted in him being elected to positions like Senior Patrol Leader before he even graduated Middle School. At the age of 14 Defendant Jakubowski achieved the ultimate award of Scouting – Eagle Scout. At the time of receiving his award, he was the youngest recorded Eagle Scout in St. Clair County, Michigan – his Eagle Scout project was completed at the very church that sowed the seeds of selflessness and service that Dominic has lived. By the time Defendant Jakubowski graduated High School, he would receive multiple Gold President's Call to Service Awards for 100s of hours of community service.

Defendant Jakubowski attended high school at Cardinal Mooney Catholic High School, at which he continued his commitment to academic excellence. He took as many AP classes as his schedule allowed which ultimately resulted in him graduating in the top ten of his class with a GPA over 4.0. Even during the summers, Defendant Jakubowski prioritized Academics taking summer college classes at the local community college to remain sharp between semesters of high school. He maintained his focus on two main after-school curricular activities – FIRST Robotics and Mock Trial. He became Captain of his robotics team his sophomore year of high school, despite

the team being made up of primarily older students. The following year, his team finished 1st in the Robotics FRC World Competition – a first for Team 4779, the "Robosapiens."

In high school "Mock Trial" Defendant Jakubowski received an award for best cross-examination in 9th grade during his first-ever trial while being on the junior varsity team. The following year, Dominic was moved to varsity in which he helped take the team to states for the first time in school history.

Defendant Jakubowski's strong moral upbringing of dedication to others resulted in him seeking attendance at a National Service Academies. At that time he was extremely overweight, being close to 280 lbs. In a span of six months he lost just under 100 lbs. and did everything he could to make his goal a reality, even going so far as to play varsity football his senior year even though he had never played football before. Defendant Jakubowski was accepted to and attended the Naval Academies High School Program and attended it. Unfortunately, his desire to attend the Naval Academy came up short when he was medically disqualified due to poor vision that was outside the range for acceptable correction.

Defendant Jakubowski's focus on academic success resulted in him receiving scholarship opportunities from engineering colleges across the country. After careful consideration, he attended Kettering University (formerly known as General Motors Institute) on a Kettering FIRST Robotic Leadership scholarship that recognized his dedication to FIRST robotics. At that time he also received a job offer as an Engineering Co-Op for Fiat Chrysler Automobiles. Defendant Jakubowski actually began at Chrysler prior to

attending college and would remain there during the entirety of his academic career at Kettering University.  He was the first in his family to ever attend and graduate from college.

While in College Defendant Jakubowski performed well, graduating with a 3.5 GPA while pursuing a bachelor's degree in electrical engineering. He graduated a year and a half earlier than his program outlined. During the first year and a half of his college years he focused on civics and politics with the intention of improving the lives of people in his local community. He started and organized the College Republicans on his campus, became Vice Chair of the College Republicans statewide, was treasurer of his county party, and sat on State Committee for the Michigan Republican Party – representing his congressional district. His involvement in politics resulted in him receiving an internship in a state house office, in which he shared his technical skills during the pandemic to help mitigate and manage COVID relief requests to the office.

After the events of the January 6, 2021, Defendant Jakubowski slowly stepped back from politics, disappointed in his decision-making and actions, and ceased involvement in politics in mid-2021. His focus is now on developing technologies in the defense industry, where he is developing uses for 3D printing technology in production of firearm components.  He is also involved in the importation of foreign parts and historic militaria for the American market, primarily pre-WWII European made long guns.   Dominic went all in on his business investing his life savings in its expansion.

He now owns a commercial building in Port Huron as well as tooling and machines for the purpose of being involved in defense contracts for firearms and firearm components for military applications – all while continuing his engineering career at FCA now known as Stellantis. Defendant Jakubowski has not lost his focus on others – donating firearms for raffles – for the South East Michigan Conservation Club, the Algonac High School Trap Team, The Fraternal Order of Police, and the Algonac Lions Club.

2.     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other <u>correctional treatment in the most effective manner</u>.

This Court, as a matter of justice and equity, should treat the Defendant Jakubowski no different than other misdemeanant offenders convicted in connection with the riot at the Capitol on January 6.  Defendant Jakubowski engaged in no act of violence.  He did not engage with any law enforcement officers, and he did not engage in any destruction of property.

Given the Defendants' actual conduct on January 6, the sentence of probation recommended by the Probation Officer is an appropriate response from this Court to address the nature of the criminal acts involved here. Anything beyond that is unnecessarily punitive, particularly in light of the collateral consequences that the federal government might have an adverse impact on his career.

Other Judges of this Court have acknowledged that such sentences are appropriate in substantially similar cases. <u>United States v. Wiesmar</u>, 21-cr-

10

00592-1, <u>United States v. Frankowski</u>, 21-cr-00592-2, <u>United States v. Cronin</u>, 21-cr- 00233. In each of those cases the Government asked for a term of incarceration, but the Court determined that such a sentence was not warranted by the facts and that a sentence of probation was sufficient to accomplish the Sec. 3553(a) policy goals.

The Defendants in <u>Wiesmar</u> and <u>Frankowski</u> are similar to the Defendants – particularly given that their conduct also included having gone inside the Capitol.  They entered the Capitol building following the crowd and while inside the building for roughly an hour they entered two Senate offices and spent several minutes inside each.

<u>Cronin</u> is also similarly situated to the Defendants, and he also entered the building.  There, along with others, he made his way towards the Senate side of the Capitol. After being in the building for a short time, Cronin exited the building the same route he entered. Again, though different from the Defendants, Cronin entered the building and spent some time traveling through the halls before exiting the building causing no damage nor engage in violence.

But maybe most similar for purposes here is the sentence imposed on by this Court in <u>United States v. Greene</u>, 21-cr-00028, a defendant in the third Oath Keepers trial.  While the facts are entirely different – as the Court knows quite well -- Defendant Greene remained outside the Capitol.  He did go to trial where he was convicted on a single "A" misdemeanor while being acquitted of three felonies and having a fourth felony dismissed following this Court declaring a mistrial.  Notwithstanding having gone to trial, this Court

nevertheless saw fit to impose only a sentence of two years probation on Mr. Greene.

Mr. Jakubowski has pled guilty, and the offense conduct here is no more aggravating that was the conduct of Mr. Greene.  On that basis, a sentence of one year probation would be factually and legally justified in this case.

DEFENDANT'S SENTENCING RECOMMENDATION

Based on a totality of the factors set forth in Section 3553(a), a sentence of probation accurately reflects the facts as they relate specifically Defendant Jakubowski and his conduct on January 6, 2021.

Date: August 22, 2024                              Respectfully Submitted,


/s/ William L. Shipley
William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendants*